**DOMINICK C. CAPOZZOLA**
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel: 973.656.1600
Fax: 973.656.1611
Dominick.Capozzola@ogletreedeakins.com
Attorneys for Plaintiff Watson Pharmaceuticals, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WATSON PHARMACEUTICALS, INC., a corporation, | Hon. Dickinson R. Debevoise |
| | Case No.: 2:10-cv-04501-DRD-MAS |
| Plaintiff, | |
| | *Civil Action* |
| v. | |
| ROBERT SUNGWON CHO, an individual, | **FIRST AMENDED** |
| Defendant. | **COMPLAINT FOR DAMAGES** |

### I.   INTRODUCTION

1.   This is an action for money damages, costs, attorneys' fees and other relief as a result of the failure of Defendant Robert Sungwon Cho ("Defendant"), who at the time the original Complaint was filed resided at 777 6th Avenue, #9G, New York, New York, a former employee of Plaintiff Watson Pharmaceuticals, Inc. ("Plaintiff"), a corporation with a facility located at 360 Mt. Kemble Avenue, Morristown, New Jersey, to meet his contractual obligations under and at least two separate agreements into which he and Plaintiff entered at the inception of Defendant's employment.  These agreements include: (1) Defendant's Offer Letter; and (2) Defendant's Relocation Reimbursement Agreement.  As a result of Defendant's breaches, Plaintiff has incurred damages in an amount in excess of $172,500.  Defendant has also failed to return Plaintiff's property, including a BlackBerry device and Plaintiff's business records.

## II.     PARTIES

2.     Plaintiff is a leading global specialty pharmaceutical company. The Company is engaged in the development, manufacturing, marketing and distribution of generic pharmaceuticals and specialized branded pharmaceutical products focused on Urology and Women's Health. Plaintiff has commercial operations in many of the world's established and growing international markets.

3.     At the time the original Complaint was filed, Defendant was a resident of New York who recently moved to the United States from Australia in connection with a job offer from Plaintiff that he accepted.  On June 22, 2010, Defendant assumed the role of Plaintiff's Director of Global Compensation.  Plaintiff terminated Defendant's employment on August 24, 2010.

## III.     JURISDICTION AND VENUE

4.     The United States District Court for the District of New Jersey has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1332 because diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000.  Plaintiff is a corporation incorporated under the laws of Nevada with its principal place of business in California, and thus it is deemed a citizen of Nevada and California.  Defendant was a resident of New York at the time the Complaint was filed and, upon information and belief, was a citizen of the State of New York.  Plaintiff seeks more than $172,500 in damages.

5.     Venue is proper in this Court because Defendant worked for Plaintiff at Plaintiff's facility in Morristown, New Jersey, and thus a substantial part of the events or omissions giving rise to the claim occurred in Morris County, New Jersey.

## IV.   FACTUAL BACKGROUND

6.    In or around April and May, 2010, Plaintiff and Defendant negotiated an employment agreement pursuant to which Defendant would relocate to the United States from Australia and assume the role of Director of Global Compensation.  On May 18, 2010, Plaintiff issued an Offer Letter to Defendant.  On May 21, 2010, Defendant signed, accepted and acknowledged the terms and conditions of the Offer Letter.  A copy of the Offer Letter containing Defendant's signature is attached as Exhibit 1.

7.    The remuneration provided under the Offer Letter included: (a) a base annualized salary of $200,000 per year; (b) benefits options including Medical, Vision, Dental, Pharmacy, Flexible Spending Accounts, Employee Assistance, Tuition Assistance, Life Insurance and Short-Term and Long-Term Disability; (c) participation in Plaintiff's Paid Time Off program; (d) participation in a target incentive program pursuant to which he was eligible to receive a target incentive award of 25% of base salary; (e) eligibility to participate in Plaintiff's Long-term Incentive Stock program; (f) a sign-on bonus of $25,000, less required tax deductions; and (g) Relocation Assistance in the net amount of $75,000 and gross amount of $128,460.24, in addition to three months of temporary housing and two one-way economy airfare tickets to the United States.

8.    The Offer Letter provided that the sign-on bonus and relocation assistance was repayable to the Company if Defendant's employment ended on or before Defendant's one-year employment anniversary date for any reason other than a Reduction in Force.

9.    On June 22, 2010, Defendant signed a document entitled, "Corporate Travel Credit Card Request Form, Bank of America MasterCard."  This document is a contract between Plaintiff and Defendant, pursuant to which Defendant agreed to comply with Plaintiff's

Corporate Travel Policy. Defendant also agreed that he would not use the Corporate Travel Credit Card Plaintiff provided to him for unauthorized purposes. A copy of this contract is attached as Exhibit 2.

10.     Within days of receiving the Corporate Travel Credit Card, Defendant made numerous unauthorized purchases for his own personal purposes. Defendant charged approximately $5,000.00 in personal expenses that included spa services, restaurant charges, clothing, and an airline ticket.

11.     This conduct constituted a breach of the agreement regarding Defendant's Corporate Travel Credit Card. It also violated company policy and constituted gross misconduct.

12.     Plaintiff and Defendant also entered into a separate Relocation Reimbursement Agreement, which provided that if Defendant was discharged due to gross misconduct or gross negligence prior to the completion of at least twenty-four consecutive months of employment after the start of work, Defendant would reimburse the company pursuant to a schedule set forth in the Relocation Reimbursement Agreement. A copy of the parties' Relocation Reimbursement Agreement is attached as Exhibit 3. Defendant agreed to reimburse Plaintiff no later than his last day of employment with the Company.

13.     Plaintiff terminated Defendant's employment on August 24, 2010 for gross misconduct.

14.     Defendant has not reimbursed Plaintiff for any of the expenses incurred under the Relocation Reimbursement Agreement, despite Plaintiff's demand for reimbursement.

15.     During the period of his employment with Plaintiff, Defendant received a BlackBerry device and various business-related documents, all of which are the property of Plaintiff.

16. Although Plaintiff has demanded that Defendant return these items, he has failed to do so. Upon information and belief, Defendant has placed these items into a storage facility in or around New York City.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

17. Plaintiff incorporates as if fully set forth herein the facts alleged in Paragraphs 1 through 16 of the First Amended Complaint.

18. Plaintiff and Defendant were parties to at least three contracts, specifically, (1) the Offer Letter (Exhibit 1); (2) the agreement governing the use of Defendant's Corporate Travel Credit Card (Exhibit 2); and (3) Defendant's Relocation Reimbursement Agreement (Exhibit 3). Plaintiff is owed monies under the Offer Letter and the Relocation Reimbursement Agreement.

19. Plaintiff has at all times performed its obligations under all applicable contracts with Defendant.

20. Defendant breached the Offer Letter and Relocation Reimbursement Agreement by failing to reimburse Plaintiff the sign-on bonus ($25,000.00 gross), his lump sum relocation payment ($128,460.24 gross), and his airfare and corporate housing expenses through September, 2010 (in excess of $19,088.33). Upon information and belief, Defendant had not vacated corporate housing at the time the original Complaint was filed, and expenses continued to accrue.

21. Defendant's breaches of his agreements with Plaintiff have caused Defendant to incur damages in an amount to be determined at trial, but that is in excess of $172,500.

22. Pursuant to this claim for relief, Plaintiff seeks damages, costs, attorneys' fees, and any other damages that may be recoverable under the law.

## **SECOND CLAIM FOR RELIEF**

### **(Conversion)**

23.     Plaintiff incorporates as if fully set forth herein the facts alleged in Paragraphs 1 through 22 of the Complaint.

24.     The BlackBerry device and documents relating to Plaintiff's business operations in Defendant's possession are Plaintiff's property.

25.     Despite Plaintiff's requests, Defendant has not returned these items to Plaintiff. By failing to return these items, Defendant has engaged in an unauthorized assumption and exercise of the right of ownership over Plaintiff's property, to the alteration of their condition or the exclusion of Plaintiff's rights of ownership.

26.     Defendant should be required to return these items to Plaintiff and pay money damages in an amount to be proved at trial.

### **VI.     PRAYER FOR RELIEF**

27.     WHEREFORE, the Plaintiff prays for Judgment against Defendant including, but not limited to:

        1.     Compensatory damages;

        2.     Interest and costs;

        3.     Attorneys' fees;

        4.     An order requiring Defendant to return Plaintiff's property; and

5. Any other damages or relief that law or equity may permit.

> FOR PLAINTIFF WATSON PHARMACEUTICALS, INC.
>
> OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
>
> By: _____
> Dominick C. Capozzola

DATED:

9615286.1 (OGLETREE)